**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**ANTAHJ SAMELLE JENKINS,**

    **Plaintiff,**

    **v.**                        **CASE NO. 25-3045-JWL**

**CHRIS McCLAIN, et. al,**

    **Defendants.**

**MEMORANDUM AND ORDER**
**TO SHOW CAUSE**

    Plaintiff Antahj Samelle Jenkins is hereby required to show good cause, in writing, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.  Plaintiff is also given the opportunity to file an amended complaint to cure the deficiencies.

**I.  Nature of the Matter before the Court**

    Plaintiff filed this pro se case under 42 U.S.C. § 1983.  Plaintiff is incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF").  The Court granted Plaintiff leave to proceed in forma pauperis.  (*See* Doc. 3.)

    Plaintiff alleges that employees of the Kansas Department of Corrections ("KDOC") are trying to kill him.  (Doc. 1, at 2.)  He states that he filed a grievance when confined at Ellsworth Correctional Facility based on actions of EAI Officer McClain and "now they moved [Plaintiff] to Hutchinson and [are] trying to kill [him] by setting [him] up with the inmates."  *Id.*; Doc. 1-1, at 1-4.  In the grievance, which Plaintiff attached to the Complaint, he alleges that McClain harassed him "by defamation of his character" starting in February of 2022.  (Doc. 1-1, at 4.)  He further

alleges that McClain has "put stuff in [his] file now I can't go to any other prison." (Doc. 1, at 2.) Plaintiff claims that he asked Major Bell to move him to protective custody, and Bell said he was going to let them kill Plaintiff. *Id*. Plaintiff also alleges that EAI Penny John has been helping McClain, and they both released phone calls, recordings of Plaintiff being interviewed about his brother's murder, and other personal information about Plaintiff to other inmates and to people outside prison. (Doc. 1-1, at 10, 15.) Plaintiff asserts that he cannot use his phone or his tablet, and he cannot mail letters without the letters being opened and read. (Doc. 1, at 3.) He also states, "They telling people I am a Rat and that alone will get me killed in prison." *Id*. Plaintiff claims that McClain is attempting "to cover up that McClain printed off my brother's work information and sent it to our enemies and they came and killed him." (Doc. 1-1, at 10, 17.)

In addition, Plaintiff alleges that the attorney appointed to represent him at an *Ortiz* hearing requesting leave to appeal out of time in his criminal case caused him pain, suffering, and mental anguish. (Doc. 1, at 5.) In an attachment to the Complaint, Plaintiff explains that he tried to help with his "defense," but the appointed lawyer, Lane Frymire, rejected his help, recorded their conversation, and gave Plaintiff a list of questions, saying he would not ask Plaintiff anything else on the stand. (Doc. 1-1, at 11.) The questions are attached to the Complaint. *Id*. at 13. The Complaint also mentions that Frymire was "helping" McClain but provides no further explanation. (Doc. 1, at 6.)

The Complaint asserts violation of Plaintiff's Eighth, First, and Fourteenth Amendment rights. (Doc. 1, at 3.) Plaintiff names as defendants Chris McClain, EAI; Penny John, EAI; (fnu) Bell, Major; (fnu) Abernathy; and Lane Frymire, Attorney. Plaintiff seeks compensation of $5 million for pain and suffering from Frymire; compensation of $95 million for mental anguish from Frymire; release from prison; and $2,700 per day from April 30, 2024 until his release. *Id*. at 5.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a

claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III.  DISCUSSION

### A.  Requested Relief

Plaintiff's request for compensatory damages is barred by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege a physical injury.  Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  Plaintiff's claim for compensatory damages is subject to dismissal.

In addition, to the extent Plaintiff seeks release from confinement, his federal claim must be presented in habeas corpus.  "[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, *but not to the fact or length of his custody.*"  *Preiser v. Rodriguez,* 411 U.S. 475, 499 (1973) (emphasis added).  When the legality of a confinement is challenged so that the remedy would be release or a speedier release, the case must be filed as a habeas corpus proceeding rather than under 42 U.S.C. § 1983, and the plaintiff must comply with the exhaustion of state court remedies requirement.  *Heck v. Humphrey*, 512 U.S. 477, 482 (1994); *see also Montez v. McKinna,* 208 F.3d 862, 866 (10th Cir. 2000) (exhaustion of state court remedies is required by prisoner seeking habeas corpus relief); *see* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of available state court remedies).  "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see Woodford v. Ngo,* 548 U.S. 81, 92 (2006); *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982).  Therefore, any claim seeking release from custody is not properly

brought in a § 1983 action.

**B.  State Actor Requirement**

To state a claim under § 1983, a plaintiff "must show that the alleged (constitutional) deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48–49 (1988); *Daniels v. Williams*, 474 U.S. 327, 330–331 (1986); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  The "under color of state law" requirement is a "jurisdictional requisite for a § 1983 action." *West*, 487 U.S. at 42; *Polk County v. Dodson*, 454 U.S. 312 (1981).  Thus, it is of no consequence how discriminatory or wrongful the actions a plaintiff may describe; merely private conduct does not satisfy the "under color of" element and therefore no § 1983 liability exists.  *See Brentwood Academy v. Tennessee Secondary Athletic Ass'n*, 531 U.S. 288, 294–96 (2001); *American Manufs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).

According to the Complaint, Defendant Frymire is an attorney who was appointed to represent Plaintiff at his *Ortiz* hearing.  The Supreme Court has held that an appointed defense attorney is not a state actor when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.  *Polk County*, 454 U.S. at 325.  None of Plaintiff's allegations about Frymire indicate that he was acting outside the functions of appointed counsel such that he should be considered a state actor.  Therefore, Frymire is subject to dismissal from this case.

**C. Eighth Amendment Claim**

Plaintiff refers to Attachment 4 (Doc. 1-1, at 4) as supporting his Eighth Amendment claim. In Attachment 4, he lists "several instances that repeatedly show that EAI McClain has harassed me by defamation of my character." *Id*.  He alleges that McClain told Plaintiff's boss that he was trying to talk to the female supervisor and that he was selling drugs; that he told someone he wanted

recordings of Plaintiff's phone calls so he could leak them; that McClain told other employees that Plaintiff was informing on a murder case; that McClain made accusations that Plaintiff was behaving inappropriately with various female staff members; that McClain spread the false rumor that Plaintiff behaved inappropriately with children; and that McClain is generally out to get him. Plaintiff asserts that McClain acted with the "specific intent to emotionally and psychologically terrorize, distress and subdue" him.  *Id*.

A prison official violates the Eighth Amendment when two requirements are met.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "First, the deprivation alleged must be, objectively, 'sufficiently serious.'"  *Id*.  To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm."  *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency."  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted).  Indeed, prison conditions may be "restrictive and even harsh."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety."  *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle

that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834. Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id*. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id*. It is not enough to establish that the official should have known of the risk of harm. *Id*.

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id*. As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id*. (citations omitted).

In addition, the Tenth Circuit has found that "[m]ere verbal threats or harassment do not rise to the level of a constitutional violation unless they create 'terror of instant and unexpected death.'" *Alvarez v. Gonzales*, 155 F. App'x 393, 396 (10th Cir. 2005) (unpublished) (quoting *Northington v. Jackson,* 973 F.2d 1518, 1524 (10th Cir. 1992)). Where "the officers' comments, although inappropriate, do not suggest a show of deadly force," they fail "to create 'terror of instant and unexpected death.'" *Id*.; *see also McBride v. Deer*, 240 F.3d 1287, at 1291 n.3 (10th Cir.

2001) ("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment.") (citation omitted).

However, the Tenth Circuit has held in a number of cases that "labeling an inmate a 'snitch' or otherwise inciting other inmates to harm an inmate states an Eighth Amendment violation, regardless of whether the inmate is ever actually physically harmed." *Harris v. Matthews*, 417 F. App'x 758, 763 (10th Cir. 2011) (unpublished) (citing *see, e.g., Benefield v. McDowall*, 241 F.3d 1267, 1271–72 (10th Cir. 2001) (holding it is clearly established law that labeling an inmate a snitch and informing other inmates of that label with knowledge of the obvious risk of danger associated with that label violates the Eighth Amendment even though the inmate is never actually harmed; "a violation of the Eighth Amendment does not turn on the type [of] relief sought" and "may be implicated not only to physical injury, but also by the infliction of psychological harm"); *Northington v. Jackson,* 973 F.2d 1518, 1525 (10th Cir. 1992) (holding plaintiff's claim that he was assaulted by other inmates as a result of a jail guard telling inmates that he was a snitch stated an Eighth Amendment violation); *Brown v. Narvais,* 265 F. App'x 734, 735–36 (10th Cir. 2008) (unpublished) (allegation that defendant disclosed plaintiff's status as a child molester knowing such label would subject the plaintiff to serious bodily harm stated an Eighth Amendment violation even though the plaintiff was never actually physically attacked); *Johnson–Bey v. Ray,* 38 F. App'x 507, 510 (10th Cir. 2002) (unpublished) (plaintiff's allegations that correctional officer intentionally told another inmate that plaintiff had tried to set him up for a disciplinary violation in order to place plaintiff in danger stated an Eighth Amendment violation; "[t]he fact that plaintiff suffered no physical injury resulting from the officer's alleged action, although relevant to the issue of damages, does not require dismissal") (citation omitted); *Purkey v. Green,* 28 F. App'x 736, 745 (10th Cir. 2001) (unpublished) ("A prisoner states an Eighth Amendment violation by

9

alleging that a prison official intended to cause him serious harm by inciting other inmates to do violence against him. While an idle threat of impending physical harm that is not carried out will not suffice to state an Eighth Amendment claim, an imminent threat of serious harm, even though injury never actually occurs, will suffice.") (citation and quotations omitted)).

The Complaint fails to include sufficient detail to determine whether Plaintiff alleges a "sufficiently serious" deprivation or facts showing he is "incarcerated under conditions posing a substantial risk of serious harm." It is unclear how long he alleges that he was subject to harassment. He mentions that he was transferred to a different facility at some point, and it appears he has been transferred again. The Court cannot discern whether Plaintiff alleges that the harassment continued after transfer. Also, it is unclear whether Plaintiff alleges that the harassment included actual threats of deadly force made by a defendant, and if so, who made the threats and were the threats credible. The Complaint mentions Plaintiff being a federal witness and FBI involvement (Doc. 1, at 6; Doc. 1-1, at 17) but offers no explanation for how the the harassment and the named defendants are related those allegations. The Complaint also alleges that McClain was involved in the death of Plaintiff's brother (Doc. 1-1, at 5) but does not explain why Plaintiff believes this or why McClain would be involved. Plaintiff is given an opportunity to provide clarification and to show cause why his Eighth Amendment claim should not be dismissed for failure to state a claim.

**D. First Amendment Claim**

The Complaint asserts that Plaintiff cannot use his phone or his tablet, and he cannot mail letters without the letters being opened and read.

Inmates have a First Amendment right to communicate with the outside world by sending and receiving mail. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Turner v. Safley*, 482 U.S.

78, 85 (1987).  However, the right is not absolute, and it is limited by concerns for institutional

security and public safety.  Moreover, the reading of outgoing non-legal mail without cause is not

unconstitutional.  *Beville v. Ednie*, 74 F.3d 210, 213-14 (10th Cir. 1996); *Zink v. Cummings*, 2017

WL 2374508, at *2 (W.D. Mich. 2017) ("Prison officials do not violate the First Amendment by

inspecting and reading an inmate's outgoing non-legal mail.") (citing *Frey v. Raisanen*, 2014 WL

545794, at *2 (E.D. Mich. Feb. 11, 2014), citing *Caldwell v. Beard*, 305 F. App'x 1, 4 (3d Cir.

2008) (prison officials did not violate the First Amendment by reading inmate's outgoing mail to

his family); *Altizer v. Deeds*, 191 F.3d 540 (4th Cir. 1999) (opening and inspecting inmate's

outgoing mail is reasonably related to legitimate penological interests and does not violate the First

Amendment); *Smith v. Delo*, 995 F.2d 827, 830 (8th Cir. 1993) (prison officials are justified in

screening outgoing nonlegal mail for escape plans, contraband, threats, or evidence of illegal

activity); *Stow v. Grimaldi*, 993 F.2d 1002, 1004–05 (1st Cir. 1993) (state prison practice requiring

that non-privileged outgoing mail be submitted for inspection in unsealed envelopes did not violate

prisoner's constitutional rights); *United States v. Whalen*, 940 F.2d 1027, 1035 (7th Cir. 1991) ("it

is well established that prisons have sound reasons for reading the outgoing mail of their inmates");

*see also Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986) (upholding prison regulations

authorizing the inspection of incoming and outgoing nonlegal mail)).

      Similarly, to the extent that prisoners have a constitutional right to telephone access[1], that

right "is subject to rational limitations in the face of legitimate security interests of the penal

institution."  *Burnett v. Jones*, 437 F. App'x 736, 745 (10th Cir. 2011) (quoting *Washington v.

Reno,* 35 F.3d 1093, 1100 (6th Cir. 1994).

      Based on the sparse allegations in the Complaint, Plaintiff fails to state a First Amendment

---

[1]  The Tenth Circuit has said that the "[u]se of the prison telephone is a privilege, not a right."  *United States v. Verdin-Garcia*, 516 F.3d 884, 895 (10th Cir. 2008).

claim.  If Plaintiff chooses to file an amended complaint, he should provide additional facts, such as when the restrictions occurred and at which facility; the reason(s) provided for the restrictions; the duration of the restrictions; who imposed the restrictions; whether the telephone restriction applied to use of the facility phone or Plaintiff's personal phone; whether the telephone restriction was a blanket ban or only applied to calls made to certain people; and any consequences of the telephone and tablet restrictions.

### E.  Fourteenth Amendment Claim

Plaintiff asserts that his rights under the Fourteenth Amendment were violated.  In support of the assertion, the Complaint merely states, "I had court and they called and messed everything up so I had to come back to prison _____ (illegible)."  (Doc. 1, at 4.)  As with his First Amendment claim, Plaintiff needs to provide additional details to state an actionable claim.

## IV.  Response and/or Amended Complaint Required

Plaintiff is required to show good cause why Plaintiff's Complaint should not be dismissed for the reasons stated herein.  Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.  To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint.  *See* Fed. R. Civ. P. 15.  An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it.  Therefore, any claims or allegations not included in the amended complaint are no longer before the court.  It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.

Plaintiff must write the number of this case (25-3045-JWL) at the top of the first page of

the amended complaint and must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a).  Plaintiff should also refer to each defendant again in the body of the amended complaint, where Plaintiff must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances.  Plaintiff must allege sufficient additional facts to show a federal constitutional violation. Plaintiff is given time to file a complete and proper amended complaint in which Plaintiff (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.  If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter may be dismissed without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **May 23, 2025,** in which to show good cause why Plaintiff's Complaint should not be dismissed for failure to state a claim.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **May 23, 2025**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send the court-approved § 1983 form to Plaintiff.

**IT IS SO ORDERED**.

**Dated April 23, 2025, in Kansas City, Kansas.**

**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**