IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ANTAHJ SAMELLE JENKINS,**

    **Plaintiff,**

    v.                                                     **CASE NO. 25-3045-JWL**

**CHRIS McCLAIN, et. al,**

    **Defendants.**

## MEMORANDUM AND ORDER
## TO SHOW CAUSE

Plaintiff filed this pro se case under 42 U.S.C. § 1983. Plaintiff is incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF"). The Court granted Plaintiff leave to proceed in forma pauperis. (*See* Doc. 3.)

The Court screened Plaintiff's Complaint under 28 U.S.C. § 1915A(a) and entered a Memorandum and Order to Show Cause (Doc. 4, "MOSC") directing Plaintiff to show cause why his Complaint should not be dismissed. The deadline for Plaintiff to respond was May 24, 2025. On May 16, 2025, Plaintiff filed an amended complaint (Doc. 5, "AC"). He has filed no other response to the MOSC. His AC is before the Court for screening.

**I. Amended Complaint**

Plaintiff alleges that on October 4, 2024, he was taken to the hole at Hutchinson Correctional Facility ("HCF"). He states that he was beaten by the "black suits," his clothing was cut off, and he was left naked in a slam cell. (Doc. 5, at 3.) Plaintiff asserts that a nurse named Beth "made an excessive force claim about" the incident. *Id.* at 4.

The AC also alleges that the living conditions at HCF are "below standard." Toilets are

caked with fecal matter, methane gas permeates the prison at night, the facility is infested with mice, and the water is brown when it first comes out of the faucet. (Doc. 5, at 2, 3.)

Plaintiff attaches to the AC a grievance that he filed when confined at Ellsworth Correctional Facility ("Ellsworth") based primarily on actions of EAI Officer McClain. (Doc. 5-1, at 1-4.) Based on the dates referenced in the grievance, it appears he was at Ellsworth before being transferred to HCF. Plaintiff alleges that McClain harassed him "by defamation of his character" starting in February of 2022. (Doc. 5-1, at 4.) Plaintiff claims that he asked Major Bell to move him to protective custody, and Bell said he was going to let them kill Plaintiff. *Id.* Plaintiff also alleges that EAI Pennyjohn helped McClain plan Plaintiff's murder "months before" Plaintiff arrived at Ellsworth, and they both released phone calls, recordings of Plaintiff being interviewed about his brother's murder, and other personal information about Plaintiff to other inmates and to people outside prison. (Doc. 5-1, at 10, 15.) Plaintiff claims that McClain is attempting "to cover up that McClain printed off my brother's work information and sent it to our enemies and they came and killed him." (Doc. 5-1, at 10, 17.) Plaintiff further states that "[t]he FBI agent from Atlanta gave McClain the okay to try and kill me[.] Everyone knows about this[.] I want these people out of my life before I['m] dead too." (Doc. 5-1, at 17.)

The Complaint asserts violation of Plaintiff's Eighth, First, and Fourteenth Amendment rights. (Doc. 5, at 4-5.) Plaintiff names as defendants Chris McClain, Enforcement, Apprehension and Investigation ("EAI"); Jeff Pennyjohn, EAI; Jordan Bell, Major; and (fnu) Abernathy, EAI. Plaintiff states that he wants to "not be going through this stuff and to be able to do my time without problems or being beat on by black suits or any other c/o.". *Id*. at 6.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a

governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a

complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### A. Misjoinder of Claims and Parties

The AC is not clear about where Plaintiff's allegations took place. KDOC records show that Plaintiff was incarcerated at Ellsworth from November 12, 2020, until January 23, 2024, when he was transferred to HCF. He remained at HCF until January 27, 2025. Therefore, it appears that Plaintiff's allegations about EAI McClain and the other defendants occurred at Ellsworth, while

4

his allegations about the "black suits" incident and unsanitary living conditions took place at HCF. As a result, Plaintiff has set forth unrelated claims in his AC.

Plaintiff must follow Rules 20 and 18 of the Federal Rules of Civil Procedure when filing a second amended complaint. Rule 20 governs permissive joinder of parties and pertinently provides:

> (2) **Defendants**. Persons . . . may be joined in one action as defendants if:
>
> > (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> >
> > (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." *Zhu v. Countrywide Realty Co., Inc*., 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001) (citation omitted). The Court of Appeals for the Seventh Circuit held in *George v. Smith* that under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (Under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.").

Requiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." *Id.* It also prevents prisoners from "dodging" the fee obligations and the three strikes provisions of the Prison Litigation Reform Act. *Id.* (Rule 18(a) ensures "that prisoners pay the required filing fees—

for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").

In sum, under Rule 18(a), a plaintiff may bring multiple claims against a single defendant. Under Rule 20(a)(2), he may join in one action any other defendants who were involved in the same transaction or occurrence and as to whom there is a common issue of law or fact. He may not bring multiple claims against multiple defendants unless the prescribed nexus in Rule 20(a)(2) is demonstrated with respect to all defendants named in the action.

The Federal Rules authorize the Court, on its own initiative at any stage of the litigation, to drop any party and sever any claim. Fed. R. Civ. P. 21; *Nasious v. City & Cnty. of Denver Sheriff's Dept.*, 415 F. App'x 877, 881 (10th Cir. 2011) (to remedy misjoinder, the court has two options: (1) misjoined parties may be dropped or (2) any claims against misjoined parties may be severed and proceeded with separately). In any amended complaint, Plaintiff should set forth the transaction(s) or occurrence(s) which he intends to pursue in accordance with Rules 18 and 20, and limit his facts and allegations to properly-joined defendants and occurrences. Plaintiff must allege facts in his complaint showing that all counts arise out of the same transaction, occurrence, or series of transactions or occurrences; and that a question of law or fact common to all defendants will arise in this action.

### B. Lack of Defendants to Some Claims

It appears that Plaintiff names no defendants to his HCF claims ("black suits" claim and unsanitary conditions). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by *a person* acting under color of state law." *West,* 487 U.S. at 48 (citations omitted) (emphasis added). Plaintiff must name defendants and must allege that each named defendant directly participated in the acts or inactions upon which the complaint is based.

6

See *Graham*, 473 U.S. at 165–66.  Allegations that a plaintiff's "rights 'were violated' or that 'defendants,' as a collective and undifferentiated whole, were responsible for those violations" are insufficient to support § 1983 claims.  *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013) (citations omitted).

If Plaintiff submits a second amended complaint, he must name defendants to the HCF claims or clearly state if any of the existing defendants were involved.

### C.  Compensatory Damages

Plaintiff is barred from recovering compensatory damages by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege a physical injury.  Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  Plaintiff mentions a use of force incident but does not describe any resulting injury.  The Complaint sought compensatory damages, but the AC no longer mentions a claim for damages of any kind.  Such claim would be barred.

### D. Eighth Amendment Conditions of Confinement Claims

Plaintiff refers to an attachment (Doc. 5-1, at 4) as supporting one of his Eighth Amendment claims.  In the attachment, he lists "several instances that repeatedly show that EAI McClain has harassed me by defamation of my character." *Id*.  He alleges that McClain told Plaintiff's boss that he was trying to talk to the female supervisor and that he was selling drugs; that he told someone he wanted recordings of Plaintiff's phone calls so he could leak them; that McClain told other employees that Plaintiff was informing on a murder case; that McClain made accusations that Plaintiff was behaving inappropriately with various female staff members; that McClain spread the false rumor that Plaintiff behaved inappropriately with children; and that

7

McClain is generally out to get him. Plaintiff asserts that McClain acted with the "specific intent to emotionally and psychologically terrorize, distress and subdue" him. *Id.*

A prison official violates the Eighth Amendment when two requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted). Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834. Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id.* "[T]he official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id*. It is not enough to establish that the official should have known of the risk of harm. *Id*.

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id*. As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id*. (citations omitted).

In addition, the Tenth Circuit has found that "[m]ere verbal threats or harassment do not rise to the level of a constitutional violation unless they create 'terror of instant and unexpected death.'" *Alvarez v. Gonzales*, 155 F. App'x 393, 396 (10th Cir. 2005) (unpublished) (quoting *Northington v. Jackson,* 973 F.2d 1518, 1524 (10th Cir. 1992)). Where "the officers' comments, although inappropriate, do not suggest a show of deadly force," they fail "to create 'terror of instant and unexpected death.'" *Id*.; *see also McBride v. Deer*, 240 F.3d 1287, at 1291 n.3 (10th Cir. 2001) ("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment.") (citation omitted).

However, the Tenth Circuit has held in a number of cases that "labeling an inmate a 'snitch' or otherwise inciting other inmates to harm an inmate states an Eighth Amendment violation,

regardless of whether the inmate is ever actually physically harmed." *Harris v. Matthews*, 417 F. App'x 758, 763 (10th Cir. 2011) (unpublished) (citing *see, e.g., Benefield v. McDowall,* 241 F.3d 1267, 1271–72 (10th Cir. 2001) (holding it is clearly established law that labeling an inmate a snitch and informing other inmates of that label with knowledge of the obvious risk of danger associated with that label violates the Eighth Amendment even though the inmate is never actually harmed; "a violation of the Eighth Amendment does not turn on the type [of] relief sought" and "may be implicated not only to physical injury, but also by the infliction of psychological harm"); *Northington v. Jackson,* 973 F.2d 1518, 1525 (10th Cir. 1992) (holding plaintiff's claim that he was assaulted by other inmates as a result of a jail guard telling inmates that he was a snitch stated an Eighth Amendment violation); *Brown v. Narvais,* 265 F. App'x 734, 735–36 (10th Cir. 2008) (unpublished) (allegation that defendant disclosed plaintiff's status as a child molester knowing such label would subject the plaintiff to serious bodily harm stated an Eighth Amendment violation even though the plaintiff was never actually physically attacked); *Johnson–Bey v. Ray,* 38 F. App'x 507, 510 (10th Cir. 2002) (unpublished) (plaintiff's allegations that correctional officer intentionally told another inmate that plaintiff had tried to set him up for a disciplinary violation in order to place plaintiff in danger stated an Eighth Amendment violation; "[t]he fact that plaintiff suffered no physical injury resulting from the officer's alleged action, although relevant to the issue of damages, does not require dismissal") (citation omitted); *Purkey v. Green,* 28 F. App'x 736, 745 (10th Cir. 2001) (unpublished) ("A prisoner states an Eighth Amendment violation by alleging that a prison official intended to cause him serious harm by inciting other inmates to do violence against him. While an idle threat of impending physical harm that is not carried out will not suffice to state an Eighth Amendment claim, an imminent threat of serious harm, even though injury never actually occurs, will suffice.") (citation and quotations omitted)).

Plaintiff also included this claim in the Complaint, and the MOSC found that Plaintiff did not include sufficient detail to determine whether he alleges a "sufficiently serious" deprivation or facts showing he is "incarcerated under conditions posing a substantial risk of serious harm."  In the AC, it remains unclear how long Plaintiff alleges that he was subject to harassment.  He mentions that he was transferred from Ellsworth to HCF at some point, and it appears he has been transferred again.  The Court still cannot determine whether Plaintiff alleges that the harassment continued after transfer.  Also, it remains unclear whether Plaintiff alleges that the harassment included actual threats of deadly force made by a defendant, and if so, who made the threats and were the threats credible.  The AC continues to allege that McClain was involved in the death of Plaintiff's brother (Doc. 5-1, at 5) but does not explain why Plaintiff believes this or why McClain would be involved.  Plaintiff is given another opportunity to provide clarification and to show cause why his Eighth Amendment claim based primarily on McClain's actions should not be dismissed for failure to state a claim.

The AC raises a new conditions of confinement claim as well.  Plaintiff alleges that the living conditions at HCF are "below standard."  Toilets are caked with fecal matter, methane gas permeates the prison at night, the facility is infested with mice, and the water is brown when it first comes out of the faucet.  (Doc. 5, at 2, 3.)

As with Plaintiff's other claims, he needs to provide additional details to state an actionable claim.  For instance, it is not clear if his allegations apply to all of HCF or only "the hole."  Plaintiff does not state how long he was exposed to such conditions, and, as explained above, Plaintiff does not name any defendant responsible for the conditions.  Plaintiff will have the chance to add to or clarify his factual allegations if he chooses to file a second amended complaint.

**E. Excessive Force Claim**

Courts generally analyze a prisoner's claim of excessive force under the Eighth Amendment's cruel and unusual punishment clause. *Cf. Whitley v. Albers*, 475 U.S. 312, 320-321 (1986); *Sampley v. Ruettgers*, 704 F.2d 491, 494-496 (10th Cir. 1983).[1] Not every isolated battery or injury to an inmate amounts to a federal constitutional violation. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (Not "every malevolent touch by a prison guard gives rise to a federal cause of action."); *Smith v. Iron County*, 692 F.2d 685 (10th Cir. 1982) (A prison guard's use of force against a prisoner is not always a constitutional violation.); *El'Amin v. Pearce*, 750 F.2d 829, 831 (10th Cir. 1984) (While an assault by a jailer on his prisoner can give rise to an action under section 1983, a jailer's use of force against a prisoner is not always a constitutional violation.); *see also George v. Evans*, 633 F.2d 413, 416 (5th Cir. 1980) ("A single unauthorized assault by a guard does not constitute cruel and unusual punishment."); s*ee DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000) (holding that prison guard's "simple act of shoving" inmate into a door frame was not an Eighth Amendment violation.); *Suits v. Lynch*, 437 F. Supp. 38, 40 (D. Kan. 1977). As the United States Supreme Court has explained:

> Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles.

---

[1] In *Sampley*, the Tenth Circuit instructed:

A prison guard's use of force against an inmate is "cruel and unusual" only if it involves "the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). We think that this standard imposes three requirements for an inmate to state a cause of action under the eighth amendment and section 1983 for an attack by a prison guard. First, "wanton" requires that the guard have intended to harm the inmate. Second, "unnecessary" requires the force used to have been more than appeared reasonably necessary at the time of the use of force to maintain or restore discipline. Third, "pain" means more than momentary discomfort; the attack must have resulted in either severe pain or a lasting injury.

*Id.*

*Baker v. McCollan*, 443 U.S. 137, 146 (1979).

"[A]n excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Giron v. Corr. Corp. of America*, 191 F.3d 1281, 1289 (10th Cir. 1999). "An official has a culpable state of mind if he uses force 'maliciously and sadistically for the very purpose of causing harm,' rather than 'in a good faith effort to maintain or restore discipline.'" *Redmond v. Crowther*, 882 F.3d 927, 936–37 (10th Cir. 2018) (quoting *Whitley*, 475 U.S. at 320–21).

Plaintiff's claim of excessive force by the "black suits" at HCF is subject to dismissal because Plaintiff fails to allege sufficient facts in support of this claim. He offers no description of events leading up to the use of force and no description of the use of force itself. "Without allegations explaining the context surrounding the use of force, the [Court] [can] not conclude that the use of [force] was excessive under the circumstances." *Toney v. Harrod*, 372 F. Supp. 3d 1156, 1163 (D. Kan. 2019) (citing *Gargan v. Gabriel*, 509 F. App'x 920 (10th Cir. 2002)). Unless Plaintiff can provide additional facts, his allegations fail to implicate constitutional concerns.

### F.  First Amendment Claim

The AC states that "they share everything with the internet," and they do not have the right to share his phone calls online. (Doc. 5, at 4.) This is a change from the Complaint, which asserted that Plaintiff could not use his phone or his tablet, and he could not mail letters without the letters being opened and read. Plaintiff does not explain who "they" are or provide any further explanation, such as specifically what he alleges happened, where it happened, and when.

Based on the sparse allegations in the AC, Plaintiff continues to fail to state a First

Amendment claim.

### G. Fourteenth Amendment Claim

Plaintiff asserts that his rights under the Fourteenth Amendment were violated. In support of the assertion, the AC merely states, "McClain called D.A. and told them lies about me being involved in my brother's murder case the whole time he had something to do with it." (Doc. 5, at 5.) As with his First Amendment claim, Plaintiff fails to provide sufficient details to state an actionable claim.

## IV. Response and/or Second Amended Complaint Required

Plaintiff is required to show good cause why Plaintiff's AC should not be dismissed for the reasons stated herein. Plaintiff is also given the opportunity to file a complete and proper second amended complaint upon court-approved forms that cures all the deficiencies discussed herein. To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the second amended complaint are no longer before the Court. It follows that a plaintiff may not simply refer to an earlier pleading, and the second amended complaint must contain all allegations and claims that Plaintiff intends to pursue in the action, including those to be retained from the amended complaint.

Plaintiff must write the number of this case (25-3045-JWL) at the top of the first page of the second amended complaint and must name every defendant in the caption of the second amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the second amended complaint, where Plaintiff must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances.

Plaintiff must allege sufficient additional facts to show a federal constitutional violation. Plaintiff is given time to file a complete and proper second amended complaint in which Plaintiff (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant. If Plaintiff does not file a second amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter may be dismissed without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **July 11, 2025,** in which to show good cause why Plaintiff's Amended Complaint should not be dismissed for failure to state a claim.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **July 11, 2025**, in which to file a complete and proper second amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send the court-approved § 1983 form to Plaintiff.

**IT IS SO ORDERED**.

**Dated June 11, 2025, in Kansas City, Kansas.**

>     **S/   John W. Lungstrum**
>     **JOHN W. LUNGSTRUM**
>     **UNITED STATES DISTRICT JUDGE**